**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NORTH DAKOTA**

| | | |
|---|---|---|
| Randy Wilkinson, | ) | |
| | ) | |
| Plaintiff, | ) | **ORDER APPROVING § 406(b)** |
| | ) | **FEE REQUEST** |
| vs. | ) | |
| | ) | |
| Andrew Saul, Commissioner | ) | |
| of the Social Security Administration | ) | Case No. 1-17-cv-147 |
| | ) | |
| Defendant. | ) | |

Before the court is a motion by plaintiff for an award of attorney fees pursuant to 42 U.S.C. § 406(b)(1). For purposes of distinguishing between the interests of plaintiff and those of counsel, plaintiff's attorney will be referred to as "petitioner."

## I. BACKGROUND

Plaintiff filed his complaint in this action on July 19, 2017, seeking judicial review of the denial of his application for Social Security disability benefits. Petitioner argued on plaintiff's behalf that the Social Security Administration's ("SSA") ALJ had erred in (1) failing to treat several of his claimed impairments as severe at step two of the five-step sequential analysis, and (2) made several errors in the determination of plaintiff's residual functional capacity.

On November 15, 2018, the court issued its decision agreeing with most of the arguments advanced by petitioner. The court ordered that plaintiff's application for benefits be remanded to the SSA for further proceedings. Wilkinson v. Berryhill, No. 1-17-cv-147, 2018 WL 6004656 (D.N.D. Nov. 15, 2018). The court also approved an Equal Access to Justice Act ("EAJA") fee award to plaintiff as a successful litigant in the amount of $6,161.05, which was paid by the government and has been received by petitioner. The EAJA fee award was calculated by

-1-

multiplying the 30.35 hours of work expended by petitioner on the judicial proceedings before this court times the EAJA attorney-fee (as adjusted for cost-of-living) of $203 per hour.

After further administrative proceedings following remand, the SSA made awards of benefits. One award was to plaintiff on May 2, 2020, for future and past-due disability benefits for the period of September 2015 through the end of April 2020. While the record is unclear with respect to the exact amount of the award, the SSA's practice is to withhold 25% of the amount of the award as a contingency in the event it is required to pay petitioner's attorney fees. In this case, the SSA is presently withholding $26,756.25 from the award to plaintiff. If this in fact represents 25% of the past-due benefits, then the past due-benefits as of the time of the award are $107,0250.

The information initially provided to the court by the petitioner indicated that a second award of future and past-due benefits was made to plaintiff on behalf of a dependent child. As part of the award, the SSA similarly determined past-due benefits were owed for the period beginning September 2015 through the end of April 2020. Again, the exact amount of past-due benefits is unclear. The SSA is presently withholding from this award $6,683.00 for payment of attorney fees. If this amount represents 25% of the past-due benefits, then the amount of past-due benefits is $26,732.

Utilizing the figures set forth above, the total of the two awards for past-due benefits that petitioner and this court believed to have been made up until most recently was $133,757. As discussed later, it appears there was an additional award of benefits that petitioner was unaware of until more recently.

Petitioner has a contingency fee agreement with plaintiff in which plaintiff agreed petitioner would be entitled to 25% of past-due benefits awarded to plaintiff as well as family members in the

event of a successful award.  However, if no award was made, plaintiff would owe nothing for petitioner's efforts.

In the motion now before the court, petitioner requests an award of fees in the amount of $33,439.25, which petitioner believed at the time was the total amount being withheld by the SSA for payment of attorney fees.  As noted above, this amount was approximately 25% of the total of what was then understood to be the amount of past-due benefits and equated on an hourly basis for the 30.35 hours expended to $1,101.79 per hour.  Petitioner argues this fee request is reasonable given the contingency fee agreement and other factors discussed in detail below.

In making his fee request, petitioner acknowledges he cannot keep both the EAJA fees paid by the government and fees that are payable by the SSA pursuant to § 406(b)(1) from amounts withheld from the two benefit awards. To prevent a double recovery, petitioner states he would pay the lesser amount of EAJA fees to plaintiff upon receipt of the fees payable pursuant to § 406(b)(1). Petitioner also stated he will not seek an award of attorney fees pursuant to § 406(a) for work performed before the SSA following the court's remand if the court awards the fee amount requested.

The government filed a response to petitioner's motion in which it outlines the law that governs fee awards.  However, it took no position as to whether petitioner's fee request is reasonable.

On July 9, 2020, the court held a telephonic conference with the petitioner and the attorney for the government to discuss the undersigned's concern there should be some showing that plaintiff is aware of the fee request as well as his right to have his views heard by the court if they should differ from the petitioner's.  Thereafter, the court issued an order (1) requiring that petitioner provide

notice to plaintiff of the pending motion and (2) setting forth a time and manner for plaintiff being able to respond. Wilkinson v. Saul, No. 1-17-cv-147, 2020 WL 4275259 (D.N.D. July 24, 2020).

Pursuant to the court's order, the petitioner on July 27, 2020 served plaintiff with a copy of the present motion along with the other required documents. On August 10, 2020, the court received and filed a letter from plaintiff objecting to the size of the fee request. (Doc. No. 34). In his letter, plaintiff contends: (1) the requested fee when evaluated on an hourly basis of over $1,000 per hour is unreasonable; (2) counsel failed to properly keep him informed as to the status of his case; (3) much of the leg work in obtaining relevant medical records was done by his spouse; (4) he and not petitioner filed the application for the award of dependent benefits; (5) counsel failed at times to make filings with the SSA in a proper or timely manner, allegedly resulting in delays in the case.

On the same day that the court received plaintiff's letter, petitioner filed a Motion for Leave to File requesting that he be given an opportunity to respond to what he contends were plaintiff's erroneous accusations regarding his representation. (Doc. No. 35). As a matter of fairness, the court issued an order permitting both petitioner and the government to respond to plaintiff's letter. Also, the court ordered that additional information be filed relevant to what plaintiff claimed in his letter as well as providing more detail about what happened in this case upon remand. The latter is relevant to making a more informed analysis of (1) petitioner's arguments about the degree of success achieved in the case, which is product not only of the court's order but also what happened upon remand, and (2) petitioner's offer to forgo seeking additional fees for work performed at the administrative level, which, if taken into consideration, requires some evaluation of the likelihood of additional fees being awarded.

On August 25, 2020, petitioner filed a response to the allegations made by plaintiff in his

letter disputing them.  Included with the response was a copy of the decision of the ALJ upon remand that resulted in the award of benefits to plaintiff and later his dependent.

After reviewing what had been filed by petitioner and plaintiff, the court decided to conduct a telephonic hearing.  During the hearing, petitioner advised that he had just received a communication from the SSA which indicated that the total amount of fees being withheld for payment of attorney fees is $40,122.75—not the $33,439.25 that petitioner and the court assumed was the amount.  It appears the difference is attributable to the fact there was an award of benefits for a second dependent that petitioner was unaware of and whose award letter had consequently not been made a part of the record.

Back-calculating the additional benefits awarded from what appears to be the increase in withheld attorney fees of $6,683.50, it appears the $6,683.50 in additional fees equates to additional benefits of $26,734.  This is within a couple of dollars of the amount of benefits the court calculated as having been awarded to plaintiff's other dependent.   With these calculations, the total award of benefits in this case now appears to be $160,491 and not the $133,757 originally assumed.

Petitioner indicated during the hearing that, notwithstanding that $40,122.75 was now being withheld for payment of fees, he would not be amending his fee request and seeks only the $33,439.25  requested.  He also agreed  that he would not seek a further award from the SSA for work performed at the administrative level, which also would become plaintiff's responsibility, if the court approved his fee request.  Finally, he again reiterated that he was obligated to pay over to plaintiff the $6,683.00 he received in EAJA fees upon receipt of the fees being withheld by the SSA.

Following a"clearing of the air" with respect to a number of plaintiff's concerns during the hearing and with petitioner's agreement (1) not to amend his fee request and (2) not to seek further

fees for work performed at the administrative level, plaintiff stated he no longer opposed the court's award of fees in the amount of $33,439.25.

## II.   DISCUSSION

### A.   Introduction

Title 42, U.S.C. Section 406(b)(1)(A) provides:

> Whenever a court renders a judgment favorable to a claimant . . . who was represented before the court by an attorney, the court may determine and allow as part of its judgment a *reasonable fee* for such representation, *not in excess of 25 percent of the total of the past-due benefits* to which the claimant is entitled by reason of such judgment.

(italics added).

Based on what had been assumed until now to be the total past-due benefits, petitioner's fee request of $33,439.25 was at the ceiling of 25% of past-due benefits permitted by § 406(b)(1). Now with past-due benefits assumed to be $160,491 and not $133,757, the percentage falls to 20.8%. What has not changed, however, is that petitioner's fee request equates to an award of $1,101.79 per hour for the 30.35 hours expended if evaluated on an hourly basis.[1] This is 4.4 times petitioner's non-contingent hourly rate of $250 per hour.

While plaintiff appears now to be satisfied with the amount of fees being requested by petitioner, the court has an independent obligation to determine whether the fee request is reasonable within the meaning of § 406(b)(1).

### B.   The use of contingent-fee agreements in Social Security cases and the Supreme Court's decision in Gisbrecht

The use of contingent-fee agreements has long been a common practice in Social Security

---

[1] If petitioner was to amend his fee request in light of the new information and ask for the full amount being withheld by the SSA for payment of attorney fees of $40,122.75 (25% of $160,491), the fee award on an hourly basis would be the equivalent of $1,332.16 per hour.

cases.  Initially, the agreements were not regulated and agreements providing for recovery of one-third to one-half of the award were common.  Gisbrecht v. Barnhart, 535 U.S. 789, 804 (2002) ("Gisbrecht").  Out of a concern that considerable lapses of time often resulted in large amounts of accrued benefits and, consequently, large legal fees, Congress in 1965 imposed several limits on contingent-fee agreements in 42 U.S.C. § 406(b)(1).  First, the percentage of recovery is limited to 25%—less than the percentage that had become common practice in SSA cases and less than what is often charged in other types of cases, including, for example, those for personal injury.  Second, only past due benefits may be considered in calculating the recoverable amount.  Third, there is not an automatic entitlement to recovery based on the percentage specified in the contingent-fee agreement, even if it is 25% or less.  Rather, Congress also imposed a "reasonableness" limit.  As noted above, § 406(b)(1) limits an attorney to recovery of "a reasonable fee . . . not in excess of 25% of . . . past-due benefits[.]"  See id. at 799–807; see also Hopkins v. Cohen, 390 U.S. 530, 534 & n.6 (1968).

In Gisbrecht, the Supreme Court resolved a split in the lower courts as to how the reasonable-limit language of § 406(b)(1) should be applied.  Some courts (including the Eighth Circuit) had concluded that the "reasonable fee" should be determined by multiplying the hours worked times a reasonable hourly rate with the *possibility* that the sum (oftentimes referred to as the "lodestar") could be enhanced if circumstances warranted but subject to the ceiling of 25% of the past-due benefits.  In concluding this was the proper approach to arriving at a reasonable fee, the courts relied in substantial part upon a series of Supreme Court cases beginning with Hensley v. Eckerhart, 461 U.S. 424 (1983) that set forth the principles to be applied in awarding fees to opposing parties under fee-shifting statutes.  Under the "lodestar approach," the fact a claimant had entered into a

contingent-fee agreement is one of a number of factors the court could (but would  not be required to) consider in determining whether the lodestar amount should be enhanced.  Gisbrecht, 535 U.S. at 797–802; see also Cotter v. Bowen, 879 F.2d 359 (8th Cir.1989).

While acknowledging that the lodestar approach was a plausible application of the statutory language, the Court in Gisbrecht rejected it as not giving sufficient consideration to the contingent-fee agreement.  The Court stated the more plausible reading of § 406(b)(1) in light of the past history of use of such agreements in Social Security cases and Congress's endorsement of them was that Congress intended that the "primary means" for setting the fee under § 406(b)(1) should be the contingent-fee agreement.  More particularly, the Court stated:

> Most plausibly read, we conclude, § 406(b) does not displace contingent-fee agreements as the *primary means* by which fees are set for successfully representing Social Security benefits claimants in court. Rather, § 406(b) calls for court review of such arrangements as an independent check, to assure that they yield reasonable results in particular cases.

Gisbrecht, 535 U.S. at 807 (footnote omitted) (italics added).

In order to give primacy to the contingent-fee agreement, the Court instructed that the reviewing court should start with the agreement and then test it for reasonableness with the burden of demonstrating reasonableness in any particular case being upon the attorney seeking the fees. Factors the Court stated could be considered in determining reasonableness (in addition to the contingent-fee agreement, which is to be primary) include:  (1) the character of the representation; (2) the results achieved; (3) whether the attorney engaged in dilatory conduct for the purpose of increasing past-due benefits and thereby the size of the potential attorney-fee award; and (4) whether the benefits are large in comparison to the time counsel spent on the case, thereby resulting in a "windfall" to the attorney.  In connection with the "windfall factor," the Court stated it would be appropriate to consider the hours worked by the attorney together with his or her hourly rate for

non-contingent fee cases.  Gisbrecht, 535 U.S. at 807–08.

Finally, the Court in Gisbrecht did not say whether the factors it identified as bearing upon the reasonableness of the requested fees were exclusive.

**C.     Whether the fee request in this case should be approved**

Petitioner has submitted a copy of the contingent-fee agreement that allows him to recover 25% of past-due benefits awarded to plaintiff and his dependents—which is within the ceiling for contingent-fee agreements permitted by § 406(b)(1).  As required by Gisbrecht, the court will start with the contingent-fee agreement.  From there, the court will consider first the factors that Gisbrecht identified as being appropriate (the "Gisbrecht factors").  Following that, other factors suggested by petitioner and some courts as being relevant will be addressed.

**1.     The contingent-fee agreement**

 It is clear from Gisbrecht that this court must honor the contingent-fee agreement unless there is a very good reason not to—albeit with the burden on petitioner to demonstrate reasonableness.  This is based upon:  (1) the Court's framing of the issue as one of whether the contingent-fee agreement should be given presumptive effect or the lodestar approach should be followed; (2) the Court's recitation of what Congress did in enacting § 406(b); and (3) the Court's direction that the contingent-fee agreement be given primacy.  See, e.g., Baron v. Astrue, 311 F. Supp.3d 633, 637 (S.D.N.Y. 2018) (discussing the deference due the contingent-fee agreement in light of Gisbrecht and stating that "a reduction in the agreed-upon contingency amount should not be made lightly.").

To do otherwise would upset the incentives that Gisbrecht concluded Congress put in place to ensure that a broad base of claimants obtain representation in SSA cases— not just those with the

best cases. See Gisbrecht, 535 U.S. at 800–08 (detailing the history of Congress's reliance upon the contingent fee system to ensure that claimants are able to obtain representation and the choice of 25% of past due benefits as an appropriate ceiling benefits—a smaller percentage than is common in other kinds of cases, but larger than the 20% of past-due benefits allowed in veterans' benefit cases); see also Crawford v. Astrue, 586 F.3d 1142, 1147–49 (9th Cir. (9th Cir. 2009) (employing a *de facto* lodestar approach in reviewing fee requests and giving short-shrift to the contingent-fee agreement is contrary to Gisbrecht and "works to the disadvantage of SSDI claimants who need counsel to recover any past-due benefits at all.").

Before leaving the contingent-fee agreement, some discussion of risk is appropriate. In some of the cases the undersigned has reviewed, some courts found there was no fraud or overreaching in the consummation of the contingent-fee agreement. The undersigned is not sure what the scope of the inquiry was since Congress has put its imprimatur on the use of contingent-fee agreements and the Supreme Court recognized in Gisbrecht that almost all such agreements would be for this percentage. One possibility, however, is "slam-dunk" cases where the error on the part of the SSA is so clear that there is no real risk of loss. In such cases, it may be appropriate to declare the contingent-fee agreement per se unreasonable and award fees on a lodestar approach without giving consideration to the fee agreement.

There may also be cases where risk of loss is perceived to be somewhat greater but, after the complaint is filed in federal court, the SSA stipulates to remand before any substantial amount of work is done. In these cases, some downward adjustment of the fee request may be appropriate depending upon the amounts involved.

Putting these situations aside, there are cases where courts have held or suggested that the

-10-

court should weigh the degree of risk of not prevailing in each case and consider the iidea of trimming fees when the chances of prevailing are stronger than in other cases.  See, e.g., Willis v. Comm'r of Soc. Sec., No. 1:10-cv-594, 2014 WL 2589259, at *5 (S.D. Ohio June 10, 2014) ("Willis") (reducing fee request because the issues raised in part because issues were not "particularly novel or complex").  The undersigned is skeptical of this approach.  The concern with fine-tuning fee requests based upon weighing the relative degree of risk in each case is the potential for upsetting the incentives created by Congress in choosing to rely upon contingent-fee agreements as a means of assuring that a broad base of claimants can obtain representation even though some of the cases are stronger than others.

In this case, it does not make a difference.  This is because the risk of loss was substantial given what was at issue.  More particularly, the risk was this court initially—and the Eighth Circuit later—concluding the ALJ had not clearly erred in its step two assessment of impairments deemed to be severe or in her assessment of plaintiff's RFC given the substantial deference given to an ALJ's determinations on these points.  Finally, this court did not remand for an award of benefits and the errors the court determined the ALJ had committed were correctable.  In other words, there was the very real possibility that, with more information and a better explanation by the ALJ, a determination of no eligibility for benefits could be sustained.  Consequently, no adjustment is warranted in this case based on risk to the extent it is a relevant consideration.

### 2.    The Gisbrecht factors

#### a.    Character of the representation

Arguably, this factor could encompass quite a few things, some of which may overlap with other factors.  Here, the undersigned focuses on the quality of the representation and the degree to

which petitioner's briefing assisted the court in deciding that the ALJ had erred and remand was required.

The undersigned has had the unfortunate experience of deciding cases where counsel did little more than get the claimant before the court—using canned briefs that only in a very general sense (if at all) addressed the propriety of the denial of benefits and leaving the court with the laboring oar of reaching a hopefully correct and fair decision. If this was such a case, the undersigned would not hesitate to reduce the requested fees.

However, that is not the situation here. Petitioner's briefing provided substantial assistance to the court when it discussed with particularity why, in light of a voluminous medical record and governing law, the ALJ had committed several errors that required remand to the SSA for further consideration. Further, the number of hours spent on the case appear to be appropriate given its complexity. In fact, an attorney of lesser experience may have had to spend more time to generate the same quality of work product. Finally, petitioner did seek an EAJA fee award. As discussed later, this softens the blow in terms of the burden placed upon the plaintiff in terms of fees.

In short, this is not a case where the quality of the briefing and arguments advanced or the failure to pursue an EAJA fee award are reason to adjust the fees being requested downward. On the other hand, while the quality of the representation was excellent, this is expected and should be the norm.[2] Further, in treating the contingent-fee agreement as the starting point, the undersigned believes the primary focus should be upon whether there is reason to adjust downward what is permitted by the fee agreement and not, starting from some other point, making an upward

---

[2] That being said, there may be cases where the effort of counsel is extraordinary and warrants an otherwise out-sized fee. See Joslyn v. Barnhart, 389 F. Supp. 2d 454, 457 (W.D.N.Y. 2005) (counsel's efforts included gathering and compiling data to demonstrate bias upon the part of the ALJ that substantially contributed to claimant obtaining an award after having been wrongly denied benefits for seventeen years).

adjustment.

Plaintiff made a number of complaints about petitioner's representation.  It appears from the discussion during the hearing that most (but, perhaps, not all) of plaintiff's concerns were the result of:  (1) confusion on his part with respect to the SSA's requirements as well as the law governing fee requests; (2) the fact that at times there could have been better communication both ways between plaintiff and petitioner or his staff; (3) the very understandable frustration on the part of plaintiff with respect to the length of the time it took to adjudicate his case; and (4) the SSA's obtuse manner of communicating with the plaintiff and petitioner in terms of what was being awarded.  In any event, after careful review, there is no evidence of any act or inaction on petitioner's part that resulted in a lesser award of benefits to plaintiff or that delayed resolution of the case.

In summary, there is no reason to adjust downward petitioner's fee request based upon the character of his performance.

### b.      Results achieved

If this court had remanded the case for an award of benefits and no appeal was taken by the SSA, then the line from what the petitioner did at the court level to the success in obtaining an award of benefits is a direct one.  Here, that is not the case since the award of benefits was the result—at least sequentially—not only of the court's order for remand but also what happened at the administrative level afterwards.  And, there may be cases where new developments upon remand are the proximate cause, so to speak, of the ultimate award and the court's order for remand a more remote cause.  In that situation, a reduction in the fee may be appropriate.

Also, further complicating this picture is the ability of counsel to seek a separate award of fees for the work performed before the SSA and the SSA instructing that the "results achieved" may

be considered as an evaluative factor in deciding the amount of fees to be awarded.  20 C.F.R. § 404.1725(b).

Finally, if there was not some ultimate success, there would not be any past-due benefits from which to make an award of fees. And, there is the underlying tension in cases like this one where the amount of past-due benefits is sizeable because of the passage of time and the award of dependent benefits between characterizing the result as a particularly good one and it being a positive in terms of evaluating the fee request and the concern of a possible windfall.

In this case, the ultimate result was favorable.  Further, in reviewing the ALJ's decision upon remand, the issues raised by the petitioner in the proceedings before this court and this court's resolution of those issue contributed significantly to the ultimate award of benefits.  Finally, this is not a case where the ultimate award of benefits is so small that an award of 25% of the benefits would be of concern to the court and, perhaps, reason for reducing the amount of the fee award.

In short, there is no reason to adjust downward the requested fees based on the results achieved.

> **c.    Whether counsel engaged in dilatory conduct for the purpose of increasing  past-due benefits**

There is no evidence that counsel engaged in dilatory conduct—whether purposely for increasing past-due benefits so there could be a higher fee award or, less nefariously, the result of inattention or other negligent handling.

> **d.    Whether the benefits are large in comparison to the time counsel spent on the case, thereby resulting in a "windfall" to the attorney**

In considering this factor, obviously there are two variables—the amount of time spent by counsel and the size of past-due benefits awarded.   Before turning to whether petitioner's fee

request would amount to a windfall, some observations about these two factors is appropriate.

With respect to the first, this is not a case where a nominal number of hours was spent.[3] Here, the court has determined that the amount of time spent by counsel in the proceedings before this court was reasonable given the issues involved.  Also, to the extent relevant as discussed later, it appears the number of hours petitioner devoted to this case at the agency level was also appropriate given the issues involved.

As for the size of the award, the are two things that contribute to what in this case is a sizeable award.  First is the passage of time, which was a primary concern of Congress in terms of contributing to unreasonable fees.  In evaluating this factor, some courts  focus primarily (if not solely) upon whether counsel has contributed to the delay.  See, e.g., Jeter v. Astrue, 622 F.3d 371, 380 n.10 (5th Cir. 2010 ("This sort of reduction, however, is limited to instances where the attorney himself unnecessarily delayed the proceedings.  Nothing in Gisbrecht supports reducing the attorney's fee merely because the Administration or the court acted to delay or extend the time line of the proceedings."); Thomas v. Colvin, No. 1:11-cv-01291, 2015 WL 1529331, at **2 (E.D. Cal. Apr. 3, 2013) ("Thomas") (noting only that counsel was not engaged in any dilatory conduct resulting in delay in a case where the past-due benefits totaled $180,866.90 and counsel sought fees of $44,603.50 representing 25% of that amount).

Other courts look more closely at the passage of time and make downward adjustments even when the delay was not caused by counsel—sometimes distinguishing between delay that is

---

[3] An example is Synder v. Berryhill, No. CV-15-00516, 2018 WL 905143 (D. Ariz. 2018).  In that case, the only time spent by counsel on the court action was three hours.  Upon the filing of the complaint, the parties entered into a stipulation for a remand without counsel having to do anything more, including not having to file a brief.  The court concluded that the fee request of $12,155.85 (25% of the award) was unreasonable, noting that it amounted a de facto hourly rate of $4,051.95.

considered typical from that which is perceived to be beyond the norm.  See, e.g., Gossett v. Saul, No. 4:14-cv-1696, 2020 WL 3440480, at *7 (N.D. Ala. June 23, 2020) (reducing fee request in part due to the lengthy delay in calculating benefits following a benefits award that the court stated was not the product of counsel's work); Ringel v. Comm'r Soc. Sec., 295 F. Supp. 3d 816, 834–36 (S.D. Ohio 2018) ("Ringel") (concluding that ten years  of administrative delay warranted a downward adjustment and suggest that anything more than four years requires scrutiny); Ashing v. Astrue, 798 F. Supp. 2d 1143, 1146–47 (C.D. Cal. 2011) ("[L]ong delay in receipt of benefits and the consequent accrual of benefits, brings a windfall to the attorney's award regardless of whether the attorney is responsible for the delay, or as here, the responsibility is the fault of the Commissioner.").

Still other courts take delay into account by looking at the result in terms of what is the resulting *de facto* hourly rate and also in some cases how that *de facto* hourly rate compares to counsel's non-contingent fee hourly rate or some equivalent.  See, e.g., Willis, 2014 WL 2589259, at **4–7(reducing fee request in part to account for delay, even though not the fault of counsel, after noting that the case was similar to other cases where courts found requested fees to be excessive because the *de facto* hourly rate was  more than four times the standard non-contingent fee rate); Williams v. Colvin, No. 2:10-cv-04103, 2014 WL 4771716 (W.D. Mo. Sept. 24, 2014) (noting the significant administrative delays and concluding that a fee request of $14,734.25 that amounted to a *de facto* hourly rate of $535.79 was unreasonable even though the delay was not the fault of counsel).

In this case, the passage of time was undoubtedly excessive from plaintiff's viewpoint, but not out of the ordinary based on the undersigned's experience.  Further, as already discussed, it does not appear that petitioner caused any delay.  Later, the court will consider the size of the award on

a gross basis and the resulting *de facto* hourly rate.

The other contributor to the size of the benefits awarded in this case is the awards to plaintiff's dependents, which do not always occur.  One of plaintiff's concerns is that petitioner would have expended the same amount of effort if plaintiff had no dependents.  And, if plaintiff had no dependents, the maximum amount this court could award in fees would be $26,756.25 (25% of the $107,0250 awarded to plaintiff).  Also, to put a finer point on it for purposes of later discussion, the *de facto* hourly rate if plaintiff had no dependents would have been $802.29—less than four times petitioner's non-contingent fee rate if this ratio is important.

While the existence of dependents does not materially add to the work that counsel has to do,  dependent benefits are only awarded if the claimant first succeeds.  Hence, the success of counsel in obtaining an award for the claimant is a proximate cause, so to speak, of the dependent-benefit awards.  Further, there is the broader perspective of Congress having decided to rely upon the use of contingent-fee agreements as means for claimants to obtain representation.  In deciding whether to engage in representing Social Security claimants on a contingent-fee basis, it seems likely that attorneys choosing to do the work take into account the prospects for obtaining awards that will result in payment of fees from a general mix of cases—some of which include dependent benefits awards and some of which do not.  Finally, Congress has not chosen to limit the recovery of contingent fees to only the past-due benefits of the claimant.  For these reasons, the court cannot conclude that the portion of the fees requested in this case that result from the award of dependent benefits is *per se* unreasonable.

Turning then to whether petitioner's fee request amounts to a windfall within the meaning of Grisbrecht, a number of courts look to what is the *de facto* hourly rate for the work performed

before the court by dividing the total of the award of benefits by the number of hours spent on court proceedings.  As noted earlier, petitioner's fee request in this case equates to an award of $1,101.79 per hour for the 30.35 hours expended.

The undersigned is not aware of any cases in this District where the court has approved a fee request in this range.  In looking to cases from other jurisdictions, it appears the courts are divided in cases, like this one, where the primary question is whether the requested fees amount to a windfall.  Compare, e.g., Barcenas v. Saul, CV 16-01311, 2019 WL 6736900, (C.D. Cal. Aug. 8, 2019) (approving a fee award of $22,803 that equated on an hourly basis to $1,099 per hour, citing a 2009 Ninth Circuit _en banc_ decision that approved an award equivalent to $902 per hour[4] in one of the cases at issue); Jody v. Saul, Civ. No. 16-969, 2019 WL 4928921 (D. Minn. Oct. 7, 2019) ("Jody") (approving an award of $29,388.45, which was 25% of the past-due benefits, stating that the resulting hourly rate of $1,229.63 was not necessarily unreasonable and citing other cases from the District of Minnesota); Amador v. Acting Comm'r of the SSA, No. 8:16-cv-3271, 2019 WL 2269826 (M.D. Fla. May 28, 2019) ("Amador") (approving an award of $30,577.61, which was 25% of the past due benefits, stating the resulting hourly of $1,474 per hour was in line with what the Middle District of Florida had awarded in other cases, albeit on the higher end); with Keith v. Saul, 5:16-cv-00103, 2020 WL 1991414, at **2–3 (W.D. Ky. April 27, 2020) ("Keith") (reducing a fee request of $34,169, which was equivalent to a rate of $1,908.82 per hour, to $8,625.00, approximately 3.6 times an assumed standard rate of $140 and the equivalent of $500 per hour, suggesting this would be approaching the top end of reasonableness in the Sixth Circuit); Ringel, supra,  (reducing a fee request of $26,735.75 to $11,700, which amounted to a reduction when

---

[4]  An award of $902 per hour in 2009 is likely close to the _de facto_ rate in this case  in today's dollars.

considered on an hourly basis from $1,371 per hour to $600 per hour); Jones v. Berryhill, No. 4:15-cv-0039, 2017 WL 6055660 (E.D. Ark. 2017) (concluding that a fee award of $13,000 amounting to a *de facto* hourly rate of $640 was unreasonable and, in the alternative, awarding fees on a lodestar basis of $4,244.82 based on an hourly rate of $189.40 that was considered to be a reasonable rate for social security cases in the Eastern District of Arkansas).

While difficult to generalize given the number of factors at play, it does appear there is a difference in the approach taken by these courts. The courts approving fee requests that, when evaluated on a hourly basis, are within the range of what is requested here tend to give greater weight to the contingent-fee agreement and are only concerned about a possible windfall when the *de facto* hourly rate *approaches* "nose-bleed" or "shocks the conscience" levels—these characterizations being the undersigned's and not those of the evaluating courts.  And, in making that determination, these courts tend to rely primarily upon whether other courts have approved fee awards resulting in comparable *de facto* hourly rates, giving little, if any, consideration to the ratio between the resulting *de facto* hourly rate and counsel's non-contingent fee rate or some substitute if counsel does not have one.  See, e.g., Jody, 2019 WL 4928921, at *2 (approving a fee request amounting to an hourly rate in the range requested in this case  without any consideration of counsel's non-contingent fee rate); Amador, 2019 WL 2269826, at *2–3 (same);  Lovejoy v. Berryhill, No. 1:15-cv-00360, 2018 WL 3629922, at **3–4 (E.D. Cal. July 27, 2018)("Lovejoy") (same).

The other courts, which might very well reduce the fees being requested here, take a more aggressive approach in reviewing for reasonableness.   In so doing, they appear to focus more on the ratio of the *de facto* hourly rate to the attorney's non-contingent fee rate. And, when the attorney

does not have a have a non-contingent fee rate (which is not uncommon since a number of social security practitioners only do work on a contingent-fee basis) these courts attempt to determine what the prevailing non-contingent fee rate is in the community or use the EAJA fee rate (or an adjusted EAJA fee rate) as a substitute.  The tendency of these courts has been to look askance at fee awards that approach four times counsel's non-contingent fee rate or its substitute.  See, e.g., Ringel, 295 F. Supp. 3d at 832–33, 842 (concluding that a fee request that was 4.4 times the standard rate was excessive and reducing the award to an amount 3.5 times the standard rate); Keith v. Saul, supra (reducing fee request to an amount that  was 3.6 times the prevailing hourly rate); Willis, 2014 WL 2589259, at **6–7 (noting cases where courts concluded that recovery of fees that are more than four times the standard rate overcompensated counsel); cf. Ellick v. Barnhart, 445 F. Supp. 2d 1166, 1173–74 (C.D. Cal. Aug. 17, 2006) ("Ellick") (reducing the fee request to 2.5 times counsel's normal hourly rate but acknowledging that the reduction was somewhat arbitrary).[5]

In this case, the *de facto* hourly rate of $1,101.79 per hour (if the court awards fees of $33,439.25) is 4.4 times petitioner's non-contingent fee rate.[6] The undersigned is skeptical, however,

---

[5]  In Ellick, the court surveyed 43 post-Gisbrecht cases that had been decided up to the time of the decision in that case (2006) and concluded there was "considerable divergence" in approach and "scant evidence of any '"uniform rule of law."'   445 F. Supp. at 1168–74 & n.6–21 (discussing the cases).  The court went on to state:

> After Gisbrecht, counsel and their clients cannot predict with any degree of certainty what courts will award as "reasonable" fees under section 406(b), particularly where the benefits are large in comparison to the amount of time spent by counsel.  And, absent further guidance from Congress or from the appellate courts, district courts cannot have  any degree of confidence that their section 406(b) awards will be consistent with what the law intends.

Id. at 1173–74.  In reviewing more recent cases, it appears little has changed and that the court's observations in Ellick largely remain true today.

[6]  A cautionary note in reviewing decisions in other cases whether supportive of the fee request in this case or not is whether counsel obtained or still could obtain an award of fees for work performed at the administrative level pursuant to § 406(a) since, depending upon the circumstances, that may impact the windfall analysis as discussed later. Further, it was only recently that the Supreme Court in Culbertson v. Berryhill, __ U.S.__, 139 S. Ct. 517 (2019) held that the 25% limit upon attorney fees in § 406(b)(1) applies only to fees for court representation and not the aggregate of fees that can be awarded under § 406(a) for work performed before the  agency and § 406(b)(1) for work performed before the court.  Before that time, the courts were split on that issue and the windfall analysis in a particular case prior

about applying an approach in *this* District that places significant reliance on the multiple of the *de facto* hourly rate to an assumed non-contingent fee rate in determining whether there has been a windfall—at least at the levels involved in this case.  One of the concerns relates back to what was discussed earlier in terms of: (1) what Congress decided in putting its imprimatur on the use of contingent-fee agreements as means whereby claimants could obtain representation; (2) Congress's choice of the limit of 25% of past-due benefits (as opposed to a greater or lower percentage) as generally providing sufficient incentive to afford representation to those who cannot otherwise afford it; and (3) what Gisbrecht concluded in terms of giving primacy to the contingent-fee agreement.  The concern is that this court does not have before it sufficient studies or data to decide whether a multiple of less than  four times counsel's non-contingent fee rate provides sufficient incentive for extending representation to a broad base of SSA claimants, including those with weaker claims.  Further, there is the concern that the necessary data may have to be pertinent to this District.  This is because the volume of Social Security cases in this District is not as great as in many other districts due to the sparse population.  With counsel likely not being able to take advantage of the economies of scale enjoyed by high-volume Social Security practitioners, the multiple in this District might have to be higher to provide the requisite incentive to pay overhead and fund the losers.[7]

  Another concern the court has is what is the appropriate non-contingent fee rate to be used

---

to Culbertson might have been impacted by whether the court believed the 25% percentage in § 406(b)(1) was limiting in terms of the award of fees at the administrative level.  Also, a number of cases make no mention whatsoever of whether fees were (or still could be) awarded for work at the administrative level.

  [7] Also, this District is part of the Eighth Circuit and there is reason to believe it affords ALJs greater leeway in assessing the significance of medical evidence without the assistance of a medical expert than some of the other courts of appeal thereby making court challenges more difficult.  See Poitra v. Colvin, No. 4:14-cv-094, 2015 WL 9700337, at **24–29 (D.N.D.  Nov. 30, 2015), report and recommendation adopted 2015 WL 9700266 (Dec. 30, 2015).

for comparison purposes.  In the cases  the court has reviewed, the rates that have been proffered by counsel or that the courts have otherwise determined to be appropriate have ranged from amounts of $180 per hour to $500 per hour or more, with the nature of the local market undoubtedly being a significant factor.  In this case, petitioner states that his non-contingent hourly rate is $250.  While that amount does not appear to be excessive on its face, the court has no information as to how that hourly rate might compare to the relatively small number of attorneys in this District who do social security work as a matter of course.  In fact, given the small number of practitioners and the fact that some may only do work on a contingent-fee basis, there may not be a prevailing rate as such.

Finally,  there are the problems of when counsel does not have an hourly rate for Social Security cases because counsel only does Social Security work on a contingent-fee basis or the proffered hourly rate appears too high.  In these situations, the court must then make a factual inquiry into what might be the prevailing non-contingent fee rate in the community, if there is one, or turn to the EAJA fee rate (as some courts have done) and then have to decide whether that is a sufficient base or whether that has to be adjusted.  Between possibly having to do this and acquiring the information to decide whether, for example, a multiple of four times is excessive, as compared to two or three times, appears to require the "satellite litigation" that Gisbrecht instructed should be avoided.  While it is true that Gisbrecht stated that the courts may consider the *de facto* hourly rate and counsel's non-contingent fee rate, the Court may have been thinking more in terms of obvious gross disparities as opposed to fine-tuning awards at relatively low multiples instead of deferring to the contingent-fee agreement.[8]

---

[8]     If the prevailing or otherwise appropriate non-contingent fee rate in this case was $200, the *de facto* hourly rate of $1,101.79 would be 5.5 times that amount.  However, if an appropriate non-contingent fee rate was $300, then the *de facto*  hourly rate would be 3.7 times that amount.

Turning then to the size of the fee request, $33,439.25 is on the high side for a single case. The same is true when considering the resulting *de facto* hourly rate of $1,101.79 per hour. However, as indicated by the cases already cited, a number of courts have approved fee requests in these ranges as being reasonable and not amounting to a windfall.  See Synder v. Berryhill, No. CV 15-00516, 2018 WL 905143 (D. Minn. Feb. 15, 2018) (fee request of $37,095.50 representing 25% of total past-due benefits of $148,382, which included dependent-benefit awards, held to be reasonable with no mention of time spent by counsel); Thomas,  2015 WL 1529331, at **2 (concluding that a $44,603.50 fee request representing 25% of past-due benefits of $180,866.90 was not unreasonable and where the total attorney and paralegal time was 40.8 hours making the *de facto* attorney hourly rate greater than $1,093.22).  Further, it bears reemphasizing that the award of $33,439.25 in this case has to: (1) cover a proportionate share of petitioner's overhead as well as provide some income; (2) cover petitioner's "losers;" and (3) provide compensation for the substantial delay between when the services are performed and when payment is received.  And, as already noted, the few attorneys who do Social Security work in this District do not handle the volume of cases that practitioners in some other areas of the country handle. Hence, they may very well need more from the "winners" to maintain a viable Social Security practice.

Nevertheless, if this was a case where counsel had obtained a separate award of fees from the SSA for work performed at the administrative level or was planning to do so, the undersigned would be faced with a difficult choice.  What tips the balance here, however, is the fact counsel is willing to forgo seeking an award of fees for work performed before the SSA. The court will return to this point separately below.

### 3.      Other factors

#### a.      Petitioner's refund of the EAJA fees to plaintiff

Petitioner argues that the court should consider in determining the reasonableness of the requested fees the fact that he would be refunding to plaintiff the $6,161.05 in EAJA fees he has been paid to date.  In advancing this argument, petitioner in his briefing subtracted this amount from the requested fees of $33,439.25 and noted that the difference of $27,278.20 is only  20% of the past-due benefits, which at the time he believed were  $133,757.

There are cases where courts have pointed to the fact that EAJA fee awards are being refunded and consider that as a positive factor bearing upon reasonableness.  See, e.g., Shack v. Commissioner of Soc. Sec., No. 3:08-c-630, 2013 WL 5755679, at *4 (N.D. Ohio Oct. 23, 2013); Villa v. Astrue, No. Civ-S-06-08, 2010 WL 118454, at *2 (E.D. Cal. Jan. 7, 2010). The undersigned is not so sure.

First, petitioner is not entitled to both the EAJA fees and the § 406(b)(1) fee award.  Hence, the return of the EAJA fees in that respect is simply a wash.  See Ringel, 295 F. Supp. 3d at 839–40 & n.39 (concluding the refund of the EAJA fees should not be a relevant consideration for that reason).  In this case, petitioner's fee request is  for  $33,439.25  and that is the amount he will end up receiving from the SSA if the court approves the fee request.  Petitioner's return of the $6,161.05 in EAJA fees he has already obtained does not change that.

Second, for purposes of Grisbrecht's "windfall" factor, the focus is arguably upon what the attorney receives and not what might be viewed as the effective amount of fees being paid by claimant.  In fact, the Supreme Court in Gisbrecht characterized the return of the EAJA fees as increasing the "amount of total past-due benefits the claimant actually receives . . . ."  535 U.S. at

796. And, when viewed from that perspective, if one added the $6,161.05 in EAJA fees to what at the time was assumed to be the total award of benefits of $133,757, the requested fee of $33,439.25 is approximately 24% of $139,918.05.[9]

Finally, it is clear from the relevant statutory language that the court's obligation is to determine the reasonableness of the fees to be awarded pursuant to § 406(b)(1) and not that amount less any refund of EAJA fees. For all of these reasons, the undersigned does not take into account petitioner's legal obligation to refund of the EAJA fees in assessing reasonableness.[10]

### b. Petitioner's agreement not to amend his fee request to include fees being withheld for the second child

A number of courts have taken into consideration as bearing upon reasonableness the fact that counsel has voluntarily agreed to take less than maximum of 25% of past-due benefits. Ringel, 295 F. Supp. 3d at 838–39 (discussing this point and citing other cases); Lovejoy, 2018 WL 3629922, at **3–4 (the fact that the amount of the fee request was well below the 25% ceiling was reason to distinguish it from other cases where fees were reduced as being a windfall). Perhaps, this is entitled to some consideration, but really how much? Take this case as example. Counsel agreed during the hearing that he would not amend his fee request to seek an additional amount based on the award to plaintiff's second child. But, what if plaintiff had five children that pushed up the total award substantially higher? To what extent would petitioner's agreement to forego fees for an

---

[9]  Of course, the numbers have now changed based on the fact it now appears the total award of benefits to plaintiff and his two dependents is $160,491. The requested fees of 33,439.25 are 20.8% of this amount. If the EAJA fees are added to the total award, the requested fee is 20% of that total of $166,652.

[10]  While one way to look at the refund of the EAJA fees is that it increases the net amount of benefits the claimant receives as noted in Gisbrecht, the EAJA award is for payment of attorney fees and not benefits. Further, the receipt of those fees by the claimant does reduce the effective amount of fees that are coming out of claimant's pocket as noted by the courts in Shack and Villa, supra. While there is a certain logic to this, the undersigned reads§ 406(b)(1) as requiring the court to consider the reasonableness of the requested fee *sans* any return of the EAJA fee for the reasons expressed above. The fact claimant has received a collateral source payment softening the blow is beside the point.

award of one out of the five dependents bear upon the reasonableness of a fee request that would be greater than what is now being sought?  Or, to put it another way, the focus should be on fee request and whether it amounts to a windfall.  Giving up greater amounts that are in windfall territory arguably should not change the calculus.

For these reasons, the undersigned is skeptical about giving much weight to the agreement to forego the amount requested for the second child in terms of the windfall analysis—particularly if petitioner is able to seek recovery of additional amounts from the SSA.

### c.    Petitioner's argument that plaintiff will continue to enjoy future benefits from which no fee is deducted

Petitioner also points to the future benefits that will accrue to plaintiff from which no fees are being assessed. Some courts appear to have taken this into account  in assessing reasonableness. The undersigned declines to do so.  Congress has presumably taken this limitation into account in setting the ceiling at 25% as opposed to a greater or lesser percentage.

### d.    Petitioner's agreement that he would not seek fees for work performed at the administrative level

Any doubts that the undersigned had about the reasonableness of petitioner's fee request of $33,439.25 were resolved by his promise not to seek further fees for work performed at the administrative level.  In this case, petitioner states he expended approximately 55 hours for work performed before the SSA.  If the court was to reduce the requested fee award for work performed before the court to $25,000, for example, and the SSA decided that $10,000 was appropriate compensation for work performed before the agency, the net result is plaintiff being responsible for

fees totaling $35,000, which is more than the current fee request.[11]  Further, if the court approved

the full amount of petitioner's fee request of $33,439.25 and the SSA awarded an additional $10,000

for work performed before the administrative agency, then the total amount of fees plaintiff would

be responsible for would be $43,439.25. The same holds true if this court reduced the amount of fees

payable, petitioner appealed the reduction, and the Eighth Circuit concluded the court erred in

reducing the fees.

In other words, petitioner's agreement to forgo any award from the SSA for work performed

at the administrative level is a meaningful concession. See, e.g., Ringel, 295 F. Supp. 3d at 840

(requesting an amount in fees less than the 25% ceiling on account of amounts received for work

performed at the administrative level is a meaningful compromise).  Further, if you add the 55 hours

spent at the administrative level to the 30.35 hours spent on work before the court, the *de facto*

hourly rate for all of the work that led to the successful awards in this case  is only $392 if the court

awards the fee request of $33,439.25 and petitioner seeks no additional fees from the SSA.

The court recognizes that only the SSA can award fees for work performed at the

administrative level.  But here, the court is not awarding fees for work before the SSA.  Rather, it

is determining whether that the amount it awards for work performed before the court does not result

in a windfall when comparing the size of the award to the amount of time expended.  There appears

to be no principled reason why the court cannot take that into account the willingness to forgo an

award of fees for work performed at the administrative level in making its windfall analysis. See,

e.g. Ringel, supra; Mudd v. Barnhart, 414 F.3d 424, 428 (4th Cir. 2005) (district court did not err

---

[11]   The court is not aware of what hourly rate the SSA might deem appropriate if petitioner was to seek an administrative fee award.  The court notes, however, the EAJA fee rate in this case was $203 per hour and petitioner states his non-contingent fee rate is $250 per hour.  If the SSA considered all of the claimed hours to be appropriate and used an hourly rate of $203, the net result would be an additional fee award of $11,165.

in considering time spent before the SSA as a factor in determining the reasonableness of the fee request when it was clear the court limited the fee award to work performed before the court); <u>Joslyn v. Barnhart</u>, 389 F. Supp. 2d 454, 457 (W.D.N.Y. 2005) (court can take into account time expended at the administrative level).

<blockquote>

**e.    Lack of objection by the government and plaintiff's withdrawal of his objection to the amount requested**

</blockquote>

The court gives little consideration to the lack of objection by the government because of a concern that it may simply be the product of a lack of resources.  However, the undersigned gives substantial (bordering upon controlling) weight to plaintiff's withdrawal of his objections to the fee award.  While the court has an independent obligation to consider the reasonableness of the fee request, the court should take into consideration voluntary and knowing choices by plaintiff that reduce his risk of potentially paying more in fees.  As noted earlier, this is the situation here.  While petitioner agreed not to seek additional fees from the award of benefits to the second child, he only agreed to forgo an award of fees for work performed before the SSA if the court approves his fee request.  If the court did not approve his fee request and he proceeded to seek fees for work performed before the SSA, there are situations where plaintiff could end up paying more as indicated by the hypotheticals discussed earlier.

**4.    Conclusion**

Petitioner's fee request of $33,439.25 is on the high side for a single case.  What tips the balance in terms of approving it is petitioner's agreement not to seek an award of additional fees for work performed before the SSA.  While that alone is enough, plaintiff's withdrawal of  his objections is also another reason.

III.   **ORDER**

Pursuant to the foregoing, it is hereby **ORDERED** as follows:

1.      Petitioner is awarded attorney's fees pursuant to 42 U.S.C. § 406(b) in the amount

of $33,439.25;

2.      The attorney's fees approved above shall be paid to petitioner from the funds being

withheld by the SSA for payment attorney fees as noted herein;

3.      Upon petitioner's receipt of payment of the above amount by the SSA, petitioner

shall promptly refund to plaintiff the $6,161.05 in EAJA fees received by petitioner;

and

4.      Pursuant to his agreement, petitioner shall not make a request to the SSA pursuant

to 42 U.S.C. § 406(a)  for payment of attorney's fees for work performed before the

SSA.

Dated this 1st day of December 2020.

/s/  Charles S. Miller, Jr.
Charles S. Miller, Jr., Magistrate Judge
United States District Court